UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                            )
QSL CORPORATION d/b/a                     )
WAXCESSORIES and                             )
CKQ DESIGNS, INC.,                              )
                                                            )
            Plaintiffs,                                 )     Civil Action No. 05-10395-NG
                                                            )
      v.                                                   )
                                                            )
FIGI ACQUISITION COMPANY, LLC,  )
                                                            )
            Defendant.                               )
_____)

**FIGI ACQUISITION COMPANY's
OPPOSITION TO PLAINTIFFS' MOTION FOR AN
ORDER ENJOINING FIGI FROM PROSECUTING
<u>CALIFORNIA DECLARATORY JUDGMENT ACTION</u>**

   This Court should not enjoin the first-filed California action, currently pending in San Diego, which involves the same parties and issues as this case. If anything, this Court should stay or enjoin <u>these</u> proceedings until the California action plays out. The plaintiffs, QSL Corporation and CKQ Designs, Inc. (collectively, "QSL") knew about the first-filed California action for at least a month before it filed this related action in Boston. Instead of filing in Boston, QSL should have filed an answer and counterclaim in San Diego (and is still bound to do so).

   There are no sound reasons for departing from the "first-to-file" rule in this instance. First, this action is a mere subset of the California action and will not resolve all of the disputes between the parties. Second, no "special circumstances" warrant enjoining the first-filed action. Third, convenience factors do not favor Boston over San Diego, where the defendant is located and where the California action has been pending for nearly three months.

Accordingly, the defendant, Figi LLC (formerly known as Figi Acquisition Company, LLC), respectfully requests that this Court deny QSL's motion to enjoin the California action. In addition, Figi requests that the Court grant its currently pending motion to transfer this action to the U.S. District Court, Southern District of California, for consolidation with the first-filed action. (In that regard, Figi aslo requests that this Court hear Figi's motion to transfer at the same time it hears QSL's motion to enjoin.)  Alternatively, Figi respectfully requests that, at the least, this Court stay or defer these proceedings until after resolution of the California action.

## STATEMENT OF FACTS

On December 28, 2004, Figi filed an action in the U.S. District Court, Southern District of California, seeking declaratory relief against allegations of patent and trade dress infringement made by the plaintiffs in this case. Figi filed that California action two months before the plaintiffs here filed the above-captioned action. Figi amended its original complaint on February 2, 2005, and served the plaintiffs on February 4, 2005.[1] Not until March 1, 2005, did QSL file this related action in this Court --when it should have filed an answer and counterclaim in California.

On March 9, 2005, Figi moved to transfer venue of this case to the United States District Court, Southern District of California, for consolidation with the first-filed California action already pending in San Diego. The relevant facts of this dispute are more fully stated in Figi's memorandum and declarations accompanying Figi's motion to transfer, and Figi therefore relies on those motion papers. *See* Court Docket Nos. 8-11.

---

[1] The original complaint was not served pending discussions with QSL. The amended complaint was, however, filed and served one month before QSL filed this action in Massachusetts.

**ARGUMENT**

**A.    The First-Filed California Action Takes Precedence**

In effect, QSL has filed a "reverse" transfer motion. That is, by filing this action in Boston and the motion to enjoin the California action, QSL is seeking to accomplish what it should have attempted to do in San Diego: move to transfer venue to Boston. But QSL surely would have failed in that attempt because the principles guiding venue disputes favor the first-filed California action. "Where identical actions are proceeding concurrently in two Federal Courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice of venue decision." *Coady v. Ashkraft & Gerel,* 223 F.3d 1, 11 (1st Cir. 2000), *quoting Cianbro Corp. v. Curran-LaVoie, Inc.* 814 F.2d 7, 11 (1st1 Cir. 1987).

It follows that there is a strong presumption against enjoining the first-filed in favor of the second-filed action. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 184 (1952)(affirming refusal of Delaware court in second-filed action to enjoin first-filed patent infringement case in Illinois). *See also Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1203 (court would not depart "from the general rule that in the absence of sound reasons the second action should give way to the first"); *Acton Corp. v. Borden, Inc.*, 670 F.2d 377, 382 and 383 (1st Cir. 1982) (affirming stay of second-filed Massachusetts action so that first-filed Ohio action involving the same issues could be decided, holding that, to "avoid duplication of effort and potentially inconsistent judgments, it stands to reason that one of the two courts should defer to the other"); *Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp.2d 16, 21 (D. Mass. 2000) (Young, C.J.) (citing presumption in favor of first-filed action and refusing to stay first-filed case pending resolution of second-filed action).

The first-to-file rule is especially strong when the second-filed case would not completely resolve the controversy between the parties, thus necessitating a return to the first-filed case in any event. *See Small v. Wageman,* 291 F.2d 734, 736 (1st Cir. 1961) (deferring second-filed action in favor of first because the second action would not adjudicate the entire controversy). That is the case here. Figi's declaratory judgment action in San Diego also seeks to quiet QSL's trademark and trade dress infringement allegations, which are not part of this Boston action.[2]

If anything, the second-filed action--*i.e.*, this action in Boston--should be stayed or enjoined until the California action plays out. *See Small, supra*, 291 F.2d at 736 (enjoining second-filed action, relying on the "principle that the action first brought should proceed to adjudication while the subsequent action is held in abeyance"); *United Fruit Co. v. Standard Fruit and Steamship Co.*, 282 F. Supp. 338, 340 (D. Mass. 1968) (enjoining second-filed action, holding that "unless there are unusual circumstances, the court should apply the 'general rule that the party filing later in time should be enjoined from further prosecution of the suit'").

Unusual circumstances or other exceptions justifying departure from the first-filed rule include the following three situations, none of which apply here:

1)   When the first-filed action is patent litigation against a "mere customer" and the later suit is a declaratory judgment action by the manufacturer of the accused devices (*e.g.*, so that the manufacturer can defend its customer against the patentee). *Codex Corp. V. Milgo Electronic Corp.*, 533 F.2d 735, 737-738 (1st Cir. 1977). Figi's situation, however, does not involve this recognized

---

[2] QSL argues that it dropped its trade dress claims in a letter of January 25, 2005, attached as Exhibit E to QSL's motion to enjoin. But one can see that this letter <u>never</u> mentions the trade dress claims. Until QSL covenants not to sue Figi on its original trade dress and trademark infringement allegations, Figi is entitled to quite those claims via a declaratory judgment.

exception. Figi is the manufacturer of the accused article. Figi's customers are not involved.[3]

2) When "one party has won a race to the courthouse by jumping the gun and filing a declaratory judgment action in a forum that has little relation to the dispute." *Veryfine Prods*., 124 F. Supp.2d at 22. Again, that is not the situation here. As argued in Section B below, Figi did not "jump the gun" in filing its declaratory judgment action in San Diego. Nor did Figi file in a forum having no relation to the dispute. To the contrary, Figi filed in its home jurisdiction, where it stands accused of patent and trade dress infringement.

3) When the conveniences of litigating in the second-filed venue far outweigh those of litigating in the first-filed venue. *United Fruit*, 282 F. Supp. at 340. Here, as argued in Figi's motion to transfer and in Section C below, the conveniences certainly do not favor second-filed Boston over first-filed San Diego.[4]

### B.    Figi Did Not "Jump the Gun"

As more fully described in Figi's pending motion to transfer and related papers, QSL sent a "cease and desist" letter to Figi , on November 17, 2004. QSL based its demand on claims of trademark rights and on a design patent not yet issued. Discussions ensued over the next month, but

---

[3] This patentee-manufacturer-customer triangle was exactly the situation in the *William Gluckin* case, on which QSL principally relies. *See William Gluckin Co. v. Intl. Playtex Corp*. 407 F.2d 177, 179-180 (2nd Cir. 1969) (in the "customer action" scenario, departing from the first-filed rule is justified because the manufacturer of the infringing articles is often the real party in interest, and the customer may have been sued for forum shopping considerations only). That scenario does not apply here, and thus the *William Gluckin* line of cases are inapplicable.

[4] Surprisingly, QSL relies on *United Fruit* to supports its motion, but in that case, the court did not depart from the first-filed rule and instead enjoined the second-filed action. In *United Fruit*, the conveniences balanced out, Massachusetts being more convenient for one party and Louisiana being more convenient for the other. *Id.*

QSL continued to press its demand. Thus, on December 28, 2004, Figi filed its declaratory judgment action in San Diego. Because the patent had not yet issued, however, Figi did not serve the complaint. On January 25, 2005, QSL's patent issued. A week later, on February 2, Figi promptly amended its complaint to include the newly-issued patent a week later. Figi then served the amended complaint on February 4. QSL did not file this case until a month later, on March 1.

Thus, it cannot be said that Figi "raced to the courthouse." Figi waited over a month after receiving QSL's November 17th demand letter before filing suit on December 28th. The purpose of the December filing was to preserve Figi's continued right to sell its product in light of QSL's threats. Figi held off on service of that complaint but kept QSL fully informed on its intentions. Specifically, in a December 28th letter from Figi's counsel to QSL's counsel, Figi warned that it would "have no choice but to proceed with an action for declaratory relief . . ." *See* Exhibit B to QSL's motion. In other words, the declaratory judgment action was hardly a "stealth" action, as QSL contends.

In *The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.,* 249 F. Supp.2d 12 (D. Mass 2002), the court agreed that the filing of a declaratory judgment action one month after receiving a cease and desist letter was not a bad faith race to the courthouse. There, the accused infringer (Holmes Group) filed a declaratory judgment action in this district against a patent owner (Hamilton Beach) seeking a declaration that the patent at issue was not valid and was not infringed. Thereafter, Hamilton Beach filed an infringement action against Holmes Group in a federal district court in Virginia. The defendant sought to have the action transferred to Virginia. In discussing an exception to the first filed rule in connection with alleged special circumstances, the court addressed the "race to the courthouse" issue:

> Moreover, Holmes did not 'react to notice of imminent filing by literally sprinting to

6

> the courthouse the same day.' *Veryfine Prods.*, 124 F. Supp.2d at 22. Although it did not wait eight months as did the alleged infringers in *Kleinerman*, <u>Holmes filed suit approximately one month after receipt of Hamilton's 'cease and desist' letter</u>.
>
> . . . in this case Holmes did not immediately race to the courthouse but provided a timely response to Hamilton's letter denying liability. Two weeks later, without having received a response, Holmes filed the pending declaratory judgment action allegedly 'to vindicate its claim of innocence' in this Court.

*The Holmes Group,* 249 F. Supp.2d at 16-17 (emphasis added).

These are precisely the circumstances under which Figi filed its California action. Despite Figi's requests, QSL never provided the evidence of intellectual property rights asserted, and continued to allege that Figi was infringing. Only after attempts to clarify the issue were exhausted, and Figi was faced with uncertainty concerning the continued sale of its products, did it initiate the California action. In fact, Figi also kept its word and waited more than thirty days before serving QSL with that action. Again, the amended pleading was filed and served <u>before</u> this Massachusetts action.

Likewise, in *Biogen, Inc. v. Schering AG, Berlex Labs., Inc.,* 954 F. Supp. 391 (D. Mass 1996), Biogen filed an action in this district seeking a declaration that it's accuser's patent was invalid and not infringed. Biogen did not, however, attempt to serve its complaint immediately on the defendants. One month later, defendant Berlex Labs filed its own patent suit in New Jersey against Biogen. As a result, Biogen served its complaint two days later (approximately one month after Biogen filed the first action). *Id.* at 392. This Court found the delay in serving Biogen's complaint immaterial:

> . . . in the instant case, Biogen had a proper basis for bringing its suit on May 3, 1996. <u>Its decision to defer serving it</u>, despite its reasonable apprehension that defendants would bring their own suit and probable understanding that Biogen's claim to the

> priority of the first-filed forum would be eroded by the fact that its action was not the first served, <u>actually minimized the risk of unnecessary litigation. If Biogen's prediction was not prophetic and it was never sued, it could have declined to serve its complaint; and litigation would have been averted.</u>

*Id.* at 398. This Court went on to hold that delay in filing " is not a factor that is sufficiently serious to justify penalizing Biogen for its restraint in pursuing litigation by deferring service of its complaint. *Id.* at 399.

In this case, Figi deferred serving its original complaint because the parties were waiting for QSL's design patent to issue. Figi was deferring service so that it could specifically plead the patent information if such patent later issued to QSL. On January 25, 2005, QSL's counsel advised Figi's counsel that the patent had issued. Ultimately, Figi did specifically plead the patent in its amended complaint of February 2, 2005. Thus, contrary to QSL's assertions, there was no bad faith motive to hide Figi's filing the first action in December 2004.

    **C.**    **The Balance of Convenience Does Not Favor Boston**

In Figi's motion to transfer, there is a lengthy discussion of the "convenience" factors as established by the First Circuit, and that discussion is incorporated into this argument. In addition, QSL's argument that it is a "smaller" company than Figi is immaterial. Both plaintiffs are corporations doing business both nationally and internationally. Both plaintiffs have continuous and systematic contacts with the State of California. They have purposefully availed themselves of the benefits of California, including, without limitation, its court system, due to the business and profits they earn in California. This Court has previously recognized that a claim of being a "smaller" company should carry no weight. *See Veryfine Prods,* 124 F. Supp.2d at 26 ("These parties have only shown the common 'hardships' associated with civil litigation, namely travel, employee absence,

document production, etc.. Phlo should not be entitled to deference because its operation is small").

### D. QSL Has Failed to Comply With the Local Rules

Finally, Figi notes that QSL failed to confer with Figi before filings its motion, in violation of Local Rule 7.1. QSL did not even bother to include the required Rule 7.1 certificate. Nor did QSL include a certificate of service. QSL may argue that no attorney had yet appeared for Figi when QSL filed its motion and thus QSL had no one with which to confer. But that is no excuse, especially because QSL had been dealing with Figi's San Diego counsel for over three months, since November 2004. QSL's counsel certainly could have called Figi's counsel. They had spoken before. Accordingly, QSL's motion should be stricken. *See, e.g., Boston Children's Heart Foundation, Inc. v. Nadal-Ginard*, Civ. A. No. 93-12539-REK, 1995 WL 17015062 at * 1 (D. Mass. 1995) (dismissing motion that failed to include LR 7.1 certificate).

**CONCLUSION**

Figi respectfully requests that this Court <u>deny</u> QSL's motion and refuse to enjoin Figi from prosecuting the first-filed California action. Rather, this Court should stay these proceedings or enjoin QSL from prosecuting the second-filed Massachusetts action.

Dated: March 18 , 2005　　　　　　　　　　FIGI, LLC
　　　　　　　　　　　　　　　　　　　　*By its attorneys*


　　　　　　　　　　　　　　　　　　　　/s/  Erik Paul Belt
　　　　　　　　　　　　　　　　　　　　Erik Paul Belt, BBO # 558620
　　　　　　　　　　　　　　　　　　　　BROMBERG & SUNSTEIN LLP
　　　　　　　　　　　　　　　　　　　　125 Summer Street
　　　　　　　　　　　　　　　　　　　　Boston, Massachusetts 02110
　　　　　　　　　　　　　　　　　　　　Tel: (617) 443-9292
　　　　　　　　　　　　　　　　　　　　Facsimile: (617) 443-0004
　　　　　　　　　　　　　　　　　　　　ebelt@bromsun.com


Of Counsel:

Peter J. Schulz, Esq.
Phillip McKenney, Esq.
GRECO TRAFICANTE & EDWARDS
555 West Beech Street
Suite 500
San Diego, CA 92101
Tel: (619) 234-3660
Fax: (619) 234-0626

02990/00501 371553.1