UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
QSL CORPORATION d/b/a WAXCESSORIES      )
and CKQ DESIGNS, INC.,                  )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              )        Civil Action No.
                                        )          05-cv-10395
                                        )
FIGI ACQUISITION COMPANY, LLC,          )
                                        )
        Defendant.                      )
_____ )


<u>OPPOSITION TO MOTION TO TRANSFER VENUE</u>

    Plaintiffs QSL Corporation d/b/a Waxcessories ("QSL") and CKQ

Designs, Inc. ("CKQ") hereby oppose defendant Figi Acquisition

Company, LLC's ("Figi") motion to transfer venue, on the ground of

*forum non conveniens*, to the United States District Court for the

Southern District of California (in San Diego).

    As set forth in plaintiffs' memorandum in support of their

Motion for an Order Enjoining Defendant from Prosecuting California

Declaratory Judgment Action (filed on March 11, 2005), which

memorandum is incorporated herein by reference, this Court should

enjoin Figi from proceeding in California, rather than transfer this

case to California.

    Figi's California declaratory action was commenced prematurely

and in bad faith, as a bullying tactic, and for that reason alone

- 1 -

this court should deny Figi's transfer motion. In addition, the court in California lacks personal jurisdiction over CKQ Designs, Inc., a purely Massachusetts-based business, and the docket of the court in the Southern District in California is far busier than the court's docket here. For all these reasons, this patent infringement litigation should proceed in Massachusetts.

<u>**ARGUMENT**</u>

<u>**Litigation Should Proceed in Massachusetts, not California.**</u>

**A. Figi's Bad Faith and the Convenience Factors Favor Proceeding in Massachusetts.**

As explained in detail in plaintiffs' memorandum in support of the motion to enjoin Figi from proceeding in California (a copy of which is attached hereto as Exhibit A) the Massachusetts case, rather than the California case, should proceed. Although the California case was technically "filed first," Figi filed that case in bad faith for the sole purpose of attempting to secure its preferred home forum in any litigation that ensued. Figi's bad faith is evident from the December 28, 2004 letter that it sent to QSL. That letter, which was sent <u>after</u> QSL had sent a cease and desist letter to Figi, threatened to commence a declaratory judgment action <u>in thirty days</u>. Figi's letter strongly implied that Figi had not yet filed such an action and would not do so until at least the end of January 2005. In reality, however, Figi had filed the declaratory judgment action <u>that</u>

- 2 -

same day.  Figi conspicuously fails to mention its December 28, 2004
letter in its motion to transfer.

When the patent in suit issued on January 25, 2005, counsel
for QSL in good faith sent a copy to Figi's counsel. That's when Figi
sprung its surprise.  Figi failed to notify QSL of the December 28,
2004, filing of the California action for over a month.  Moreover,
contrary to Figi's motion, Figi did *not* serve the complaint or the
amended complaint on February 4, 2005.  Instead, on February 4, 2005,
Figi's counsel sent a letter to QSL's counsel enclosing the First
Amended Complaint, along with "Waivers of Service of Summons" forms,
pursuant to which Figi requested that counsel for QSL and CKQ accept
service on their behalves.

QSL counsel still attempted to settle the matter with Figi,
and correspondence on the subject of settlement continued for a week
or more.  After those talks hit a stone wall, QSL and CKQ filed their
complaint in Boston on March 2, 2005. Counsel for QSL and CKQ then
accepted service in the California case on March 9, 2005.

In light of these facts, it is clear that Figi acted in bad
faith when it prematurely filed its California declaratory judgment
action in a transparent attempt obtain its preferred home forum.

Moreover, on balance it would be more convenient to proceed in
Massachusetts than in California.  Figi does not dispute that there
is a strong presumption in favor of plaintiffs QSL and CKQ's chosen
forum of Massachusetts, a presumption made even stronger by the fact

- 3 -

that it is plaintiffs' home forum.  In addition, it would be more convenient for the parties to litigate in Massachusetts than in California, given that plaintiffs are purely Massachusetts-based companies and Figi is a large organization that sells its products through a nationwide sales force, including in Massachusetts.

**B. The United States District Court in California Lacks Personal Jurisdiction Over CKQ.**

Figi's motion papers set forth in great detail the ways in which the court in California has personal jurisdiction over *Figi*, but fail to explain how the California court has personal jurisdiction over *CKQ*.[1]  Judicial economy is, of course, one factor that may weigh for or against a transfer.  See e.g., Kleinerman v. Luxtron Corp., 107 F.Supp.2d 122, 126.  It is clearly more efficient to try all related issues in a single action.  See id.  Here, Figi named CKQ as a defendant in California, but CKQ lacks sufficient contacts with California for the court there to exercise personal jurisdiction.[2]  Accordingly, it would be more efficient to try all the claims, involving all the parties, in Massachusetts.

In a patent infringement case, Federal Circuit law governs the issue of personal jurisdiction.  See, e.g., Red Wing Shoe Co. v.

---

[1] As part of its campaign to bully QSL and CKQ, Figi included Kevin Quinn as an individual defendant in its amended complaint in California. Kevin Quinn is the named inventor on the patent in suit, but the patent also indicates on its face that Mr. Quinn assigned his rights to CKQ.  Mr. Quinn as an individual is not a proper party, and when counsel for QSL and CKQ pointed this out, Figi dropped its claim against Mr. Quinn.

[2] CKQ will, if necessary, file a motion to dismiss the claims against it in the California action on the ground that the court lacks personal jurisdiction.

Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998).
As the party seeking to invoke the California court's jurisdiction,
Figi will have the burden of establishing, by a preponderance of the
evidence, personal jurisdiction over CKQ.  See, e.g., Carteret Sav.
Bank, FA v. Shushan, 954 F.2d 141, 142 (3d Cir.), cert. denied, 506
U.S. 817 (1992).  A plaintiff may not rely on conclusory allegations
raised in its pleadings, but rather "must sustain its burden of proof
through 'sworn affidavits or other competent evidence.'"  North Penn
Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir.)
(per curiam), cert. denied, 498 U.S. 847 (1990).

       The determination whether the court in California can exercise
personal jurisdiction over CKQ is a two-step process.  First, the
court will apply California's long-arm statute, and second, the Court
must determine whether the exercise of jurisdiction comports with due
process.  California's long-arm statute permits a court to exercise
personal jurisdiction over a defendant to the extent permitted by the
Due Process Clause of the Constitution. Cal. Code Civ. P. § 410.10;
Gordy v. Daily News, L.P., 95 F.3d 829,831 (9th Cir. 1996).  Due
process requires that CKQ "have certain minimum contacts with
[California] such that the maintenance of the suit does not offend
'traditional notions of fair play and substantial justice.'"  See
International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)
(quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); Red Wing, 148
F.3d at 1358.  There must be "some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  As explained below, CKQ does not have such minimum contacts with California.

CKQ is a Massachusetts corporation with its only place of business in Massachusetts. Its employees (3 in all), officers, and directors all work in Massachusetts. CKQ's principal activity consists of designing ceramic candle accessories and other household products in Massachusetts.  CKQ is not qualified or registered to do business in California.  CKQ maintains no registered agent for service of process in California.  CKQ has no offices in California, has no telephone listings or mailing addresses in California, has no employees or agents based in or property located in California, and is not subject to property or income taxation by the State of California.  CKQ has no assets or bank accounts in California.  See Affidavit of Frank Quinn.  Accordingly, the California court cannot exercise personal jurisdiction over it.

**C.  The Public Interest Favors Proceeding in Massachusetts.**

Where there are parallel proceedings, one factor that courts consider in deciding where the case should proceed is how busy are the respective dockets of each court.  See e.g., Mercier v. Sheraton Intern., Inc., 981 F.2d 1345, 1357-58 (1st Cir. 1992) (requiring comparison of relative congestion of dockets).  Here, as seen in the

judicial caseload profiles from "www.uscourts.gov," a copy of which is attached hereto as Exhibit B, the Southern District of California is extremely busy, with over twice as many filings per year as Massachusetts.  This is another factor pointing toward proceeding in Massachusetts.

<u>**CONCLUSION**</u>

For all the foregoing reasons, plaintiffs QSL Corporation d/b/a Waxcessories and CKQ Designs, Inc. respectfully request that this Court deny defendant's Motion to Transfer Venue for *Forum Non-Conveniens* Under 28 U.S.C. § 1404 and instead issue an order enjoining defendant from prosecuting its declaratory judgment action in the United States District Court for the Southern District of California.

Respectfully submitted,

QSL CORPORATION d/b/a WAXCESSORIES and CKQ DESIGNS, INC.,

By their attorneys,


 /s/ Ian J. McLoughlin
John L. Welch  BBO No. 522,040
Ian J. McLoughlin  BBO No. 647,203
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
617/832-1000

Dated: March 22, 2005

- 7 -

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| QSL CORPORATION d/b/a WAXCESSORIES and CKQ DESIGNS, INC.,<br><br>    Plaintiffs,<br><br>        v.<br><br>FIGI ACQUISITION COMPANY, LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)     05-cv-10395<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER ENJOINING
DEFENDANT FROM PROSECUTING CALIFORNIA DECLARATORY JUDGMENT ACTION

Plaintiffs QSL Corporation d/b/a Waxcessories ("QSL") and CKQ Designs, Inc. ("CKQ") submit this memorandum of law in support of their motion for an Order enjoining defendant Figi Acquisition Company, LLC ("Figi") from prosecuting a recently-filed and closely-related action for a declaratory judgment in the United States District Court for the Southern District of California.

In this Massachusetts action, plaintiffs QSL and CKQ contend that defendant Figi is infringing their United States Design Patent No. D-501,205, entitled "Holder/Charging Stand For A Mobile Phone Or The Like," issued on January 25, 2005 (the '205 patent). In the California action, Figi seeks a judgment against QSL and CKQ, declaring that the patent is invalid and that Figi has not infringed.

As set forth below, although the California action was filed

- 1 -

first, this Court should enjoin Figi from proceeding in California
due to Figi's bad faith commencement of the California action and due
to the balance of convenience of the parties and witnesses.  Figi's
race to the courthouse with an unsupported and unsupportable
declaratory judgment action is nothing more than a transparent ploy
designed to give Figi an unfair advantage over plaintiffs. Figi, not
QSL or CKQ, is the real defendant in this matter, and the lawsuit
should proceed here.

**BACKGROUND AND INTRODUCTION**

Plaintiffs QSL and CKQ are Massachusetts corporations with their
only places of business at 20 Commercial Drive, Dracut,
Massachusetts.  QSL and CKQ are small but growing family-owned
businesses that design and market ceramic candle accessories and
other household products.  Among these products are ceramic mobile
phone holders and charging stands, which QSL markets under the
trademark PHONE WHERE.  (Affidavit of Sean M. Quinn, ¶ 1).

QSL has a total of about 45 employees, all located in Dracut,
Massachusetts.  Sean Quinn is QSL's CEO.  His mother, Carol A. Quinn,
is the Chairman of the Board of QSL; and his sister, Sandra L.
Grenier, is the Secretary and Treasurer.  (Affidavit of Sean M.
Quinn, ¶¶ 1-2).

CKQ has three employees: namely, Sean Quinn's brother, Kevin
Quinn, who is the President; their father, Frank Quinn, the

Treasurer; and their mother, who is the Secretary. (Affidavit of Sean M. Quinn, ¶ 3).

On information and belief, defendant Figi is a Delaware corporation, with its place of business in California. On further information and belief, Figi is a large, national company that sells gifts and accessories for the garden and home. According to the Figi website at www.figi.net, it has showrooms in Chicago, Atlanta, Los Angeles, and Dallas. Also on information and belief, Figi has at least one sales representative in Massachusetts and has substantial business here. (Affidavit of Sean M. Quinn, ¶ 4). Accordingly, Figi is clearly subject to personal jurisdiction in Massachusetts.

In or about November 2004, plaintiffs learned that defendant Figi was offering for sale mobile phone holders that, because of their substantial similarity to QSL's products, were apparently copied from plaintiffs' proprietary design. On November 17, 2004, counsel for QSL sent a cease and desist letter to Figi, urging Figi to stop selling the copied cell phone holders, and informing Figi that QSL would receive patent protection in the near future. (Letter from John Welch to Figi, dated November 17, 2004, attached as Exhibit A).

In late November 2004, in response to the cease and desist letter, counsel for Figi requested more information pertaining to the pending patent. Counsel for QSL provided what information it had,

- 3 -

and informed counsel for Figi that it would forward the patent as soon as it issued.

On December 28, 2004, counsel for Figi sent a letter to counsel for QSL, averring that Figi had yet to receive "evidence of an intellectual property right owned by your client," and requesting "a release of any claims of infringement."  The letter further stated as follows:

> Given the uncertainty created by your demands, if we do not receive the release requested herein **within thirty (30) days of the date of this letter**, we will have no choice but to proceed with an action for declaratory relief, seeking to invalidate any patent application which you may have submitted to the United States Patent Office, and seeking a declaration of noninfringement.  **We hope that such legal action will not be necessary**, and respectfully request that you agree to withdraw your demands and allow our respective clients to continue to simply compete freely in the marketplace. [emphasis supplied]

(Letter from Peter Schultz to John Welch dated December 28, 2004, attached as Exhibit B).

What the letter failed to mention, and what Figi failed to disclose to QSL until more than a month later, was that on that same day -- December 28, 2004 -- Figi filed a declaratory judgment action against QSL in the U.S. District Court for the Southern District of California.  (Declaratory Judgment Complaint, attached as Exhibit C; print-out from PACER, attached as Exhibit D).  Figi's complaint sought a declaratory judgment that the patent was invalid (even though the patent had not issued yet) and that Figi had not

- 4 -

infringed.  Although Figi's complaint attached numerous pieces of
correspondence between the parties, it conspicuously and conveniently
failed to attach a copy of the December 28, 2004 letter.[1]  At the
time of filing its stealth complaint, and for over a month
thereafter, Figi made no effort to serve the Summons and Complaint.
Accordingly, QSL had no idea that it had been sued.

On January 25, 2005, the '205 patent duly issued.  The patent
lists Kevin Quinn as the inventor and CKQ as the assignee.  QSL is
the exclusive licensee of the patent.

Also on January 25, 2005, with no knowledge that Figi had filed
a declaratory judgment action, counsel for QSL faxed counsel for Figi
a copy of the '205 patent, as Figi had requested.  (Letter from John
Welch to Peter Schultz dated January 25, 2005, attached as Exhibit
E).  Still, Figi chose not to inform QSL of the lawsuit in
California.  Instead, Figi used the information it had received from
QSL to craft an amended complaint against QSL, adding CKQ as a
defendant.[2]  Moreover, as part of its nefarious scheme to harass QSL,
Figi also saw fit to add Kevin Quinn as a defendant, even though it
was obvious on the face of the '205 patent that Mr. Quinn had
assigned all his rights, and even though Figi had no basis to believe
that the California court had personal jurisdiction over Kevin Quinn.

---

[1] Indeed, Figi's First Amended Complaint, which is discussed below, also fails
to include the December 28, 2004 letter.

Only at the insistence of QSL and CKQ did Figi ultimately drop its bogus claims against Mr. Quinn.

On February 4, 2005, having amended its stealth complaint, counsel for Figi finally sent a letter to counsel for QSL, disclosing for the first time that Figi had filed the California action.  The letter enclosed the First Amended Complaint, along with "Waivers of Service of Summons" forms, pursuant to which Figi requested that counsel for QSL and CKQ accept service on their behalves.  Counsel for QSL and CKQ has not accepted service, and Figi has not otherwise effectuated service.  Indeed, QSL and CKQ have yet to appear in the California action.

Following the February 4, 2005 letter, in spite of Figi's trickery, counsel for QSL and CKQ nonetheless sought to negotiate a resolution of the dispute with counsel for Figi by telephone and e-mail correspondence.  Each side made a settlement proposal.  After the close of business in Massachusetts on Friday, February 25, 2005, however, Figi sent an e-mail rejecting the latest offer from QSL and CKQ and refused to issue a counter-offer.  QSL and CKQ therefore filed the Complaint in this action on Tuesday, March 1, 2005.  The next day, QSL and CKQ served the Complaint and Summons in this action upon defendant Figi.

---

[2] The '205 patent, the Complaint, and the First Amended Complaint in the California action erroneously list CKQ Designs as "CKO" Designs.  CKQ has informed the patent office and counsel for Figi of this error.

**ARGUMENT**

Plaintiffs QSL and CKQ seek an Order enjoining defendant Figi from prosecuting the declaratory judgment action in California. This Court has the power to enjoin Figi from prosecuting that case. See William Gluckin & Co., Inc. v. International Playtex Corp., 407 F.2d 177, 178, 180 (2d Cir. 1969) (affirming order restraining Playtex from prosecuting patent infringement suit in Georgia in favor of declaratory judgment action in New York); National Equipment Rental, Ltd. v. Fowler et al, 287 F.2d 43, 46 (2d Cir. 1961) (affirming order enjoining Fowler from prosecuting Alabama action in favor of New York action); United Fruit Co. v. Standard Fruit and Steamship Co., 282 F.Supp. 338, 340 (enjoining defendant from further proceeding with Louisiana action pending Massachusetts action). Here, the Court should enjoin Figi from prosecuting the California action because that action was brought surreptitiously, in bad faith, merely as an attempt to gain an unfair advantage over plaintiffs. Moreover, the convenience of the parties and witnesses favors litigation in Massachusetts.

**Litigation Should Proceed in Massachusetts, not California.**

Where two identical[3] actions are pending concurrently in two federal courts, there is a general rule in favor of the first-filed

---

[3] Figi's declaratory judgment action also seeks relief relating to potential trade dress rights that QSL and CKQ might have in their cell phone holders. The letter from QSL's counsel to Figi's counsel dated January 25, 2005, however, clarified that QSL and CKQ were not claiming trade dress rights, but are relying only on the design patent.

action, although "[e]xceptions...are not rare, and are made when justice or expediency requires..." <u>Genentech, Inc. v. Eli Lilly & Co.</u>, 998 F.2d 931, 937-38 (Fed. Cir. 1993), <u>overruled on other grounds by Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 289 (1995); <u>Dupont Pharmaceuticals Co. v. Sonus Pharmaceuticals, Inc.</u>, 122 F.Supp. 2d 230, 231 (D.Mass. 2000) ("The trial court's discretion serves to temper the first-filed rule."). In particular, the presumption given to the first-filed action may be overcome where (1) special circumstances favor the later-filed action or (2) convenience factors favor the later-filed action. <u>See</u> <u>e.g.</u>, <u>Kleinerman v. Luxtron Corp.</u>, 107 F.Supp.2d 122, 124-25 (D.Mass. 2000) (giving preference to second-filed action due to special circumstances after consideration of convenience factors).

Here, as explained below, even though the California action was filed first, the special circumstances of this case -- i.e. because the California case was filed in bad faith for the sole purpose of securing a preferred forum for Figi -- dictate that the later-filed Massachusetts case should proceed. In addition, it would be more convenient to proceed in Massachusetts than in California.

### A. Special Circumstances, Such as Bad Faith, Nullify the General Presumption in Favor of the First-Filed Action.

The presumption in favor of the first-filed action is nullified where, as here, a lawsuit is filed for the sole purpose of winning a race to the courthouse in order to gain a preferred forum. <u>See</u> <u>Kleinerman</u>, 107 F.Supp.2d at 124; <u>Big Baby Co. v. Schecter</u>, 812

- 8 -

F.Supp. 442, 443 (S.D.N.Y. 1993) (giving no weight to first-to-file rule where first-filed complaint for declaratory judgment was not served until after patent holders initiated later-filed action for infringement); Republic Insurance Co. v. Sinclair Oil Corp., 791 F.Supp. 278, 280-81 (D. Ut. 1992) ("Courts have demonstrated reluctance to entertain declaratory judgment actions which have been filed in anticipation of another lawsuit and in an attempt to forum shop.").

In particular, bad faith on the part of the plaintiff in the first-filed case voids the general presumption favoring the first-filed case. See e.g., Republic, 791 F.Supp. at 280-82. For example, a plaintiff who misleads a defendant into foregoing litigation in order to negotiate a settlement and then files suit will not be rewarded for his or her misconduct. See Davox Corp. v. Digital Sys. Int'l, Inc., 846 F.Supp. 144, 148 (D.Mass. 1993)(refusing to hear first-filed action where plaintiff promised to negotiate with defendant, but instead filed complaint seeking declaratory judgment).

Here, the Court should enjoin defendant Figi from prosecuting its California declaratory judgment action because from the outset Figi consistently acted in bad faith and misled QSL and CKQ as to its intentions. After QSL sent a cease and desist letter in November 2004, Figi sent a letter to QSL on December 28, 2004, threatening to commence a declaratory judgment action in thirty days. The letter strongly implied that Figi had not yet filed such an action and would

not do so until at least the end of January 2005.  In reality,
however, Figi had filed the declaratory judgment action <u>that same
day</u>.

On January 25, 2005, the day the patent issued, QSL provided a
copy of the patent to Figi as part of the parties' on-going
discussions.  Figi, however, still failing to disclose that it had
filed suit a month before, used the information contained in the
patent to craft an amended complaint against QSL and CKQ, and even
added the inventor of the patented design, Kevin Quinn, as a
defendant -- although Figi knew that he had assigned all his rights
in the patent.  Only then, having amended its December complaint, did
Figi belatedly inform QSL and CKQ that it had filed a declaratory
judgment action.

If there were any doubt as to the bad faith nature of Figi's
conduct, one need only look at the December 28, 2004 complaint that
it filed. In that complaint, Figi sought a declaratory judgment of
patent invalidity and non-infringement **<u>even though the patent had not
issued yet.</u>**

It is thus obvious that the sole reason Figi filed its
declaratory judgment action was to obtain a perceived tactical
advantage by securing its favored forum.  This court should not
reward such reprehensible conduct.  Indeed, if Figi were allowed to
proceed with the California case, Figi would be rewarded for "conduct
which is inconsistent with the sound policy of promoting

- 10 -

extrajudicial dispute resolution, and conservation of judicial resources." <u>Davox</u>, 846 F.Supp. at 148.

In the context of a patent case in particular, special circumstances may arise that defeat the first-filed rule where, as here, (1) a patent holder notifies an alleged infringer of suspected infringement, (2) good faith negotiations between the parties ensue, and (3) the alleged infringer then files a declaratory judgment action in his or her preferred forum. <u>See</u> <u>Kleinerman</u>, 107 F.Supp.2d at 124-25. Here, as in <u>Kleinerman</u>, QSL notified Figi of its infringing activities in an attempt to pursue what it thought were good faith negotiations, only to learn that Figi had already filed a declaratory judgment action in California. Accordingly, the Court should enjoin Figi from prosecuting the California case.

**B. Convenience Factors Nullify the General Presumption in Favor of the First-Filed Action.**

The general preference accorded the first-filed action is also defeated where the balance of convenience factors favor allowing the second-filed action to proceed. <u>See</u> <u>Kleinerman</u>, 107 F.Supp.2d at 125. There are multiple factors used to measure the convenience of litigating in a certain court: "1) the plaintiff's choice of forum, 2) the convenience of the parties, 3) the convenience of witnesses and location of documents, 4) any connection between the forum and the issues, 5) the law to be applied and 6) the state or public interest at stake." <u>Id.</u>

There is a strong presumption in favor of plaintiffs QSL and CKQ's chosen forum of Massachusetts, a presumption made even stronger by the fact that it is their home forum. <u>See</u> <u>id.</u> In addition, it would, on balance, be more convenient for the parties to litigate in Massachusetts than in California, given that Figi is a large organization that sells its products nationwide, including in Massachusetts. Massachusetts is more convenient in terms of QSL and CKQ's witnesses and documents, including witnesses and documents relating to the invention of the '205 patent. Massachusetts also has a strong interest in hearing this dispute, because it involves two local, family-owned businesses that have been subjected to the machinations of an out-of-state patent infringer.

In sum, given the strong preference in favor of plaintiffs' choice of forum, the interest of the Commonwealth in protecting its citizens, and the relative size of the parties, the convenience factors favor enjoining Figi from prosecuting the California action.

## CONCLUSION

For all the foregoing reasons, plaintiffs QSL Corporation d/b/a Waxcessories and CKQ Designs, Inc. respectfully request that this Court grant their Motion for an Order enjoining Defendant Figi Acquisition Company, LLC from prosecuting its declaratory judgment action in the United States District Court for the Southern District of California.

Respectfully submitted,

QSL CORPORATION d/b/a WAXCESSORIES and
CKQ DESIGNS, INC.,

By their attorneys,

/s/ Ian J. McLoughlin
John L. Welch  BBO No. 522,040
Ian J. McLoughlin  BBO No. 647,203
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
617/832-1000

Dated: March 4, 2005

- 13 -

Judicial Caseload Profile Report                                    http://www.uscourts.gov/cgi-bin/cmsd2004.pl

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| CALIFORNIA SOUTHERN | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | | Filings* | 7,964 | 8,202 | 8,360 | 6,442 | 6,686 | 6,762 | | |
| | | Terminations | 8,034 | 8,106 | 8,191 | 6,393 | 6,579 | 6,513 | | |
| | | Pending | 3,506 | 3,592 | 3,522 | 3,462 | 4,087 | 3,489 | | |
| | % Change in Total Filings | Over Last Year | | -2.9 | | | | | 67 | 12 |
| | | Over Earlier Years | | | -4.7 | 23.6 | 19.1 | 17.8 | 30 | 6 |
| Number of Judgeships | | | 13 | 13 | 8 | 8 | 8 | 8 | | |
| Vacant Judgeship Months** | | | 9.1 | 12.3 | .0 | .0 | .8 | 13.1 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 612 | 631 | 1,045 | 805 | 836 | 845 | 15 | 4 |
| | | Civil | 219 | 217 | 357 | 327 | 348 | 377 | 80 | 11 |
| | | Criminal Felony | 262 | 274 | 437 | 478 | 488 | 468 | 5 | 2 |
| | | Supervised Release Hearings** | 131 | 140 | 251 | - | - | - | 1 | 1 |
| | Pending Cases | | 270 | 276 | 440 | 433 | 511 | 436 | 84 | 12 |
| | Weighted Filings** | | 481 | 478 | 785 | 724 | 726 | 750 | 51 | 9 |
| | Terminations | | 618 | 624 | 1,024 | 799 | 822 | 814 | 10 | 4 |
| | Trials Completed | | 25 | 23 | 40 | 44 | 55 | 47 | 22 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 3.3 | 3.3 | 3.8 | 4.0 | 3.7 | 3.8 | 1 | 1 |
| | | Civil** | 6.9 | 6.5 | 6.4 | 6.9 | 7.5 | 7.8 | 9 | 1 |
| | From Filing to Trial** (Civil Only) | | 30.0 | 23.5 | 21.0 | 24.0 | 26.0 | 28.0 | 72 | 10 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 97 | 94 | 92 | 68 | 38 | 27 | | |
| | | Percentage | 4.7 | 4.4 | 4.3 | 3.5 | 2.0 | 1.3 | 57 | 5 |
| | Average Number of Felony Defendants Filed Per Case | | 1.1 | 1.1 | 1.1 | 1.1 | 1.1 | 1.2 | | |
| | Jurors | Avg. Present for Jury Selection | 59.13 | 55.51 | 58.29 | 58.31 | 35.52 | 54.40 | | |
| | | Percent Not Selected or Challenged | 44.5 | 45.3 | 44.3 | 45.9 | 45.7 | 45.7 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2845 | 97 | 3 | 766 | 99 | 29 | 68 | 240 | 176 | 157 | 870 | 11 | 329 |
| Criminal* | 3400 | 2206 | 7 | 15 | 20 | 7 | 709 | ** | 3 | 382 | 13 | 12 | 26 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

**EXHIBIT B**
**Opposition to Motion to Transfer Venue**

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **MASSACHUSETTS** | | 2004 | 2003 | 2002 | 2001 | 2000 | 1999 | Numerical Standing | |
| | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 3,819 | 3,720 | 3,765 | 3,276 | 3,651 | 3,770 | | |
| | Terminations | 3,683 | 3,513 | 3,565 | 3,470 | 3,501 | 3,842 | | |
| | Pending | 4,496 | 4,416 | 4,300 | 4,126 | 4,275 | 4,117 | | |
| | % Change in Total Filings — Over Last Year | | 2.7 | | | | | 38 | 2 |
| | % Change in Total Filings — Over Earlier Years | | | 1.4 | 16.6 | 4.6 | 1.3 | 64 | 3 |
| Number of Judgeships | | 13 | 13 | 13 | 13 | 13 | 13 | | |
| Vacant Judgeship Months** | | 8.0 | 7.0 | .0 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 294 | 285 | 289 | 252 | 281 | 290 | 83 | 2 |
| | FILINGS — Civil | 255 | 246 | 243 | 222 | 249 | 258 | 74 | 2 |
| | FILINGS — Criminal Felony | 27 | 31 | 38 | 30 | 32 | 32 | 93 | 5 |
| | FILINGS — Supervised Release Hearings** | 12 | 8 | 8 | - | - | - | 72 | 2 |
| | Pending Cases | 346 | 340 | 331 | 317 | 329 | 317 | 65 | 1 |
| | Weighted Filings** | 349 | 344 | 354 | 322 | 364 | 347 | 74 | 1 |
| | Terminations | 283 | 270 | 274 | 267 | 269 | 296 | 85 | 3 |
| | Trials Completed | 17 | 15 | 15 | 12 | 13 | 14 | 58 | 2 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 14.9 | 14.3 | 13.4 | 13.2 | 12.6 | 12.4 | 94 | 5 |
| | From Filing to Disposition — Civil** | 9.4 | 10.7 | 11.5 | 10.2 | 10.2 | 10.9 | 42 | 3 |
| | From Filing to Trial** (Civil Only) | 31.7 | 28.5 | 25.5 | 23.8 | 26.4 | 23.0 | 75 | 4 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 215 | 198 | 229 | 275 | 260 | 160 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 5.7 | 5.4 | 6.3 | 7.7 | 7.0 | 4.4 | 68 | 4 |
| | Average Number of Felony Defendants Filed Per Case | 1.5 | 1.4 | 1.6 | 1.6 | 1.5 | 1.7 | | |
| | Jurors — Avg. Present for Jury Selection | 47.60 | 49.14 | 46.26 | 51.51 | 44.40 | 41.94 | | |
| | Jurors — Percent Not Selected or Challenged | 27.5 | 33.4 | 23.2 | 26.2 | 14.8 | 15.2 | | |

| 2004 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3312 | 97 | 24 | 424 | 43 | 34 | 269 | 503 | 581 | 223 | 492 | 10 | 612 |
| Criminal* | 351 | 29 | 8 | 46 | - | 22 | 96 | ** | 4 | 91 | - | 14 | 41 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."